IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-01870-LTB-BNB

AMERICAN ECONOMY INSURANCE COMPANY, an Indiana corporation,

Plaintiff,

v.

WILLIAM SCHOOLCRAFT, MD., P.C., d/b/a COLORADO CENTER FOR REPRODUCTIVE MEDICINE, P.C., a Colorado corporation,
WILLIAM B. SCHOOLCRAFT, M.D., individually,
LANCE J. GOFF, individually and as a parent and next friend of M.G., a minor,
ELIZABETH S. TAYLOR, individually and as a parent and next friend of M.G., a minor, and
DOES 1 through 5,

Defendants.
_____

**ORDER**
_____

This matter is before me on **American Economy's Motion to Compel Production of Documents and Request to Re-Take the Deposition of Gary Smith** [Doc. # 181, filed 3/29/2007] (the "Motion to Compel"). I held a hearing on the Motion to Compel on April 19, 2007, and took the motion under advisement. I now GRANT the Motion to Compel.

I.

This case is part of an insurance coverage dispute between the plaintiff, American Economy Insurance Company ("AEI"), and COPIC Insurance Company ("COPIC"). Both companies insured William Schoolcraft, M.D., P.C., doing business as the Colorado Center for Reproductive Medicine, P.C. (the "Center"). The Center filed claims with its insurers based on the following series of events:

> Lance Goff ("Goff") and Elizabeth Taylor ("Taylor") are plaintiffs in a lawsuit against [the Center] and other parties in the District Court for the City and County of Denver, Colorado, . . . (the "Underlying Suit"). In the Underlying Suit, Goff/Taylor allege that Center, which held itself out as a leader in assisted reproductive technology, failed to screed Goff/Taylor's egg donor for cystic fibrosis genetic mutation and, accordingly, provided to Goff/Taylor an embryo with the cystic fibrosis genetic mutation. Goff/Taylor's daughter was born with cystic fibrosis, a severely debilitating, painful, and deadly disease which will require a lifetime of health care and rehabilitation treatment. Based on various legal theories . . . Goff/Taylor's lawsuit seeks economic damages for the extraordinary medical, psychological, life care, educational, and essential service expenses associated with caring for a child with cystic fibrosis, non-economic damages for emotional distress, anguish, inconvenience, and impairment of quality of life, attorney's fees, interest, as well as the costs of litigation.

*Scheduling Order* [Doc. # 35, filed 3/15/2006] at pp.8-9. AEI issued a commercial general liability insurance policy to the Center which contained an exclusion from coverage for "professional services." *Motion to Compel* at p.2. COPIC insured the Center under a professional liability policy. Id.

According to the Motion to Compel, the Center requested both insurance companies to provide a defense and indemnity for the claims asserted in the Underlying Suit. COPIC accepted the defense for all claims asserted against the Center and provided indemnity to the Center for some claims, but not all. AEI denied coverage. COPIC eventually settled the Underlying Suit and paid its policy limits. Thereafter, COPIC assigned to the Center all of COPIC's claims for equitable subrogation, contribution, and unjust enrichment against AEI. COPIC maintained a 50% interest in "whatever monies the Center may recover from [AEI]." Id. at p.3.

In this action, AEI seeks a declaration that its policy provides no insurance coverage for the Underlying Suit. *Scheduling Order* at p.2. Goff and Taylor assert counterclaims against AEI

2

for breach of the insurance contract, bad faith breach of the insurance contract, and violation of the Colorado Consumer Protection Act. Id. at p.11. The Center asserts counterclaims against AEI for equitable subrogation, unjust enrichment, and contribution. *Amended Answer and Counterclaims [etc.]* [Doc. # 55, filed 5/18/2006].

II.

The Motion to Compel is directed at the following two discovery requests served on the Center:

> **Request for Production No. 1.** Please produce COPIC's entire claim file with respect to the Claim submitted by You to COPIC, including claim files located in any local office, regional office, or home office, and claim files generated and maintained by independent insurance adjusters or private investigators and any electronic claim file entries.

*Motion to Compel* at p.4.

> **Request for Production No. 2.** Please produce all billing statements of legal counsel, including fees and costs, submitted to COPIC by any legal counsel retained by You and any defendant named in the Denver District Court Lawsuit. . . .

Id. at p.11. The Center responded to the two requests, stating that the responsive materials are not in its possession, custody, or control, and objecting to the requests based on the attorney-client privilege and the work product immunity. Id. at pp.4, 11-12.

Faced with the suggestion that the responsive materials are in the possession of non-party COPIC, and not the Center, AEI served subpoenas duces tecum on the custodian of record for COPIC and on Gary Smith, COPIC's claim adjuster responsible for overseeing the Underlying Suit, calling for the same materials as were requested in from the Center by Production Requests 1 and 2. Id. at pp.5-6. COPIC and Smith refused to turn over the responsive

3

documents, asserting the attorney-client privilege and work product immunity. Id. at p.6. No one, including the Center, COPIC, and Smith, has prepared a privilege log or otherwise itemized the documents withheld on a claim of privilege. Id.

AEI claims that COPIC waived any privilege that may exist with respect to its claims file and the attorney billing records when COPIC assigned its claims against AEI to the Center and allowed the Center to assert the assigned counterclaims here. According the AEI:

> COPIC's claim file is directly relevant or reasonably calculated to lead to the discovery of admissible evidence because it is part of the factual basis of the Center's Assigned Counterclaims and thus is discoverable pursuant to Fed. R. Civ. P. 26(b)(1). For example, the Center is pursuing the Assigned Counterclaims against [AEI] based on COPIC's claim that some or all of the . . . settlement it paid to Goff/Taylor is recoverable against [AEI] because it was the debt or obligation of [AEI] and not COPIC. Thus, COPIC's claim file entries regarding: the basis for COPIC's settlement; COPIC's obligations under its policy to pay policy limits; COPIC's decision to settle for its policy limits; COPIC's claim that it satisfied/settled claims that should have been indemnified by [AEI]; COPIC's claim that [AEI] was unjustly enriched by COPIC's settlement; and how much of COPIC's settlement payment COPIC claims should have been satisfied by [AEI], are relevant to and likely to lead to the discovery of admissible evidence concerning the Assigned Counterclaims.

*Motion to Compel* at p.7. In other words, AEI claims that it is entitled to discover COPIC's analysis at the time it settled with Goff and Taylor as to what amount of the settlement was attributable to claims for which COPIC was the insurer and was obligated to pay and what amount was attributable to claims that should have been paid by AEI.

III.

Jurisdiction in this action is based on diversity of citizenship. *Complaint [etc.]* [Doc. # 1, filed 9/27/2005] at ¶7. Consequently, state law supplies the rule of decision on attorney-client

4

privilege issues. Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699 (10th Cir. 1998). By contrast, the work product immunity is governed, even in diversity cases, by the uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3). Id. at 702 n.10.

The attorney-client privilege in Colorado is codified at section 13-90-107(1)(b), C.R.S., as follows:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

In general, the purpose of the attorney-client privilege is to encourage "full and frank communications between attorneys and their clients. . . ." People v. Swearingen, 649 P.2d 1102, 1104 (Colo. 1982). "The privilege extends to confidential communications by or to the client in the course of gaining counsel, advice, or directions with respect to the client's rights or obligations." Mountain States Telephone and Telegraph Co. v. DiFede, 780 P.2d 533, 541 (Colo. 1989)  In addition, however:

> [T]he attorney-client privilege is not an absolute privilege and may be waived by the client. Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure.

People v. Sickich, 935 P.2d 70, 73 (Colo. App. 1996).

In the DiFede case, the Colorado Supreme Court recognized the "in issue" exception to the attorney-client privilege:

> Although we have not directly addressed this issue before, it is clear from our review of cases from other states that by placing in issue a confidential communication going directly to the claim or defense, a party impliedly waives the attorney-client privilege with respect to that communication.

DiFede, 780 P.2d at 543.  More recently, in People v. Madera, 112 P.3d 688 (Colo. 2005), the Colorado Supreme Court further explained the "in issue" exception to the attorney-client privilege, stating:

> Courts have found implied waiver of the attorney-client privilege when a defendant places the allegedly privileged communication at issue in the litigation, because any other rule would enable the client to use as a sword the protection which is awarded him as a shield.
>
> \* \* \*
>
> [I]mplied waiver in these circumstances is comparable to a situation where the trial court gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. . . . [F]inding an implied waiver is necessary to ensure compliance with the fairness principle.  Thus, the trial court must enter appropriate orders clearly delineating the contours of the limited waiver before the privilege holder discloses communications which would be privileged attorney-client communications but for the [implied waiver by putting the matter in issue].

Id. at 691 (internal quotations and citations omitted).

The Colorado Supreme Court has cautioned against the excessive application of the "in issue" exception to the attorney-client privilege, however.  Id. at 690-91 (noting that the "general policy against invading the privacy of an attorney's course of preparation" is "well recognized and . . . essential to an orderly working of our system of legal procedure," and cautioning that exceptions to attorney-client privilege "are simply exceptions" and that "the rule is that attorney-client communications are privileged and protected from discovery by opposing parties").

6

Consequently, that court adopted a three-prong test to determine whether there has been an implied waiver of the attorney-client privilege by putting a matter in issue:

> [I]mplied waiver of a privilege is appropriate where the following factors are present: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

DiFede, 780 P.2d at 543-44; accord Madera, 112 P.3d at 691-92. The burden of proving waiver of the attorney-client privilege is on the party seeking to overcome the privilege, in this case AEI. Madera, 112 P.3d at 690. Even where there has been an implied waiver of the privilege, the scope of the implied waiver must be carefully delineated. Id. at 691.[1]

Applying the three part DiFede test, I find that COPIC has put in issue the portions of its

---

[1] The court in Madera discussed the use of an *in camera* review to determine whether documents are subject to the "in issue" exception to the attorney-client privilege. 112 P.3d at 691. I find that such a review is not necessary here. As the court noted, such a review places a "significant workload burden" on the trial court undertaking the review, and that review may be "tedious at best and probably unproductive as well." Id. On the facts presented here, I find that it is more efficient to place the burden on the parties, at least initially, to determine which documents fall within the waiver. With the guidance provided here, COPIC must produce the documents which it determines, in good faith and after review of their contents, fall within the waiver. In addition, it must produce written objections with respect to any documents withheld from production on a claim of privilege. Rule 45(c)(2)(B), Fed. R. Civ. P. The written objections must be in the form of a privilege log specifying the documents of the claims file which COPIC has withheld, if any, as beyond the scope of the "in issue" waiver. The written objections must describe in detail the documents withheld and must state the precise reasons the documents are subject to the privilege asserted and not subject to the "in issue" waiver. See McCoo v. Denny's, Inc., 192 F.R.D. 675, 680 (D. Kan. 2000). The information provided in the written objections must be sufficient to enable AEI and the court to determine whether the asserted privilege is properly invoked. Id. With the benefit of the production and the written objections, AEI and COPIC must confer about any continuing dispute they may have with respect the applicability of the attorney-client privilege to any particular documents, in view of COPIC's "in issue" waiver, see D.C.COLO.LCivR 7.1A, and may bring to my attention any matters they are unable to resolve on their own. At that time, if necessary, I will consider the propriety of an *in camera* inspection.

claims file addressing the following issues: (1) the basis for COPIC's decision to settle the claims by Goff /Taylor; (2) COPIC's assessment of its obligation under its own policy to pay the Goff/Taylor claims and the amount of the claims for which COPIC viewed itself as being responsible; (3) COPIC's assessment of AEI's obligation under its policy to pay the Goff/Taylor claims and the amount of the claims for which COPIC viewed AEI as being responsible; (4) COPIC's assessment that it was satisfying and settling claims that should have been indemnified by AEI; and (5) COPIC's assessment that AEI was being unjustly enriched by COPIC's settlement if the Goff/Taylor claims.  These matters were put in issue by COPIC as a result of its decision to assign its claims to the Center, thereby allowing the Center to assert those claims against AEI as counterclaims in this action. The issues identified are directly in issue in the counterclaims.  Upholding the attorney-client privilege and allowing the Center to assert its counterclaims against AEI without requiring COPIC to disclose this vital information would unfairly deny AEI access to information necessary to its defense of the counterclaims.

As in the case of the attorney-client privilege, a litigant cannot use the work product doctrine as both a sword and shield. Frontier Refining, 136 F.3d at 704.  Consequently, I find that the protections of the work product immunity have been waived for the same reasons and to the same degree as was the attorney-client privilege.

AEI also seeks the production of unredacted copies of the legal bills submitted to COPIC in connection with the Underlying Suit.  AEI claims that it needs these materials to defend against the Center's claim to recover from AEI "some or all of the attorneys' fees and legal costs paid by COPIC for defense of the Center and its doctors" in the Underlying Suit. *Motion to Compel* at p.11.

I agree with AEI that COPIC, by its assignment of claims to the Center, has put in issue the legal bills incurred by COPIC in the Underlying Suit, and has thereby waived any privilege which may have existed with respect to those bills. DiFede, 780 P.2d at 543-44.[2] Consequently, COPIC must produce unredacted copies of any legal bills for which the Center seeks reimbursement from AEI.

IV.

AEI also seeks leave to re-depose Gary Smith. As noted previously, Mr. Smith was COPIC's claim adjuster responsible for overseeing the Underlying Suit. *Motion to Compel* at p.6. Mr. Smith was served with a subpoena duces tecum calling for the claims file and the lawyers' bills. Mr. Smith failed to produce the subpoenaed documents at his deposition on a claim of privilege. Id. at pp. 6-7. AEI seeks to re-depose Mr. Smith after the production of the subpoenaed documents so that it may question him about them.

AEI also seeks to re-depose Mr. Smith because "[d]uring his [initial] deposition [AEI] asked Mr. Smith whether he had been asked to be an expert in the litigation and he answered that he had not. . . . Nevertheless, four days later after Mr. Smith's deposition was taken both the Center and Goff/Taylor identified Mr. Smith as one of their experts." Id. at p.8.

My order requiring the disclosure of additional documents, together with the defendants' decision to endorse Mr. Smith as a non-retained expert witness on the issue of the reasonableness

---

[2] Although the basis of my ruling is that any privilege attaching to the lawyers' bills has been waived under the "in issue" exception to the attorney-client privilege, and not that the documents were not privileged at the outset, I note that generally speaking the attorney-client privilege does not extend to billing records. See Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine pp.72-74 (4th ed. 2001); Thomas E. Spahn, A Practitioner's Guide to the Attorney-Client Privilege and the Work Product Doctrine §4.3 at n.8 (2001)

9

of the attorneys' fees paid by COPIC in the Underlying Suit, constitute good cause to allow the reopening of Mr. Smith's deposition.

V.

IT IS ORDERED that on or before **May 7, 2007**, COPIC shall produce to AEI all of the documents required to be produced by this order, together with written objections, in the form of a privilege log, identifying any responsive documents withheld from production on a continuing claim of privilege.

IT IS FURTHER ORDERED that AEI's deposition of Gary Smith may be reopened to allow AEI to examine Mr. Smith about information disclosed by the documents produced pursuant to this order and matters related to his expert opinions to be offered at the trial. The reopened deposition shall be completed on or before **May 28, 2007**.

Dated April 24, 2007.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge