IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE LEWIS T. BABCOCK

Civil Case No.  05-cv-01870-LTB-BNB

AMERICAN ECONOMY INSURANCE COMPANY, an Indiana corporation,

        Plaintiff,

v.

WILLIAM SCHOOLCRAFT, M.D., P.C., d/b/a COLORADO CENTER FOR
REPRODUCTIVE MEDICINE, P.C., a Colorado corporation,
WILLIAM B. SCHOOLCRAFT, M.D., individually,
LANCE J. GOFF, individually, and as a parent and next friend of M.G., a minor,
ELIZABETH S. TAYLOR, individually and as parent and next friend of M.G., a minor; and
DOES 1 through 5,

        Defendants.
_____

AMENDED MEMORANDUM OPINION AND ORDER
_____

Babcock, C.J.

This matter is before me on the following motions seeking summary judgment filed by

Plaintiff, American Economy Insurance Company ("American Economy"):  1) American

Economy's Motion for Summary Judgment **[Doc # 158]**; and 2) American Economy's Motion for

Partial Summary Judgment **[Doc # 155]**.   In addition, before me is a Motion for Partial Summary

Judgment **[Doc # 126]** filed by Defendants Lance J. Goff and Elizabeth S. Taylor, individually,

and as a parents and next friend of M.G. ("Goff and Taylor"), which has been joined by

Defendants William Schoolcraft, M.D., P.C., d/b/a Colorado Center for Reproductive Medicine,

P.C. ("CCRM") and William B. Schoolcraft, M.D. ("Dr. Schoolcraft").   Oral argument would not

materially assist me in my determination.  After consideration of these related motions, as well as

the attached exhibits, I GRANT American Economy's Motion for Summary Judgment, I DENY

Goff's and Taylor's Motion for Partial Summary Judgment, and I DENY AS MOOT American Economy's Motion for Partial Summary Judgment.

## I.  BACKGROUND

CCRM and Dr. Schoolcraft maintain that American Economy owes them a defense, and indemnification up to the limits of their insurance policy, regarding a lawsuit filed in state court by Goff and Taylor for damages related to *in-vitro* fertilization services provided by CCRM and Dr. Schoolcraft.   American Economy subsequently filed this lawsuit – pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, *et. seq.* – seeking a declaration that it had no duty to provide a defense or indemnification to CCRM and Dr. Schoolcraft related to the underlying litigation.

CCRM and Dr. Schoolcraft deny that American Economy is entitled to the declaratory relief it seeks and raise various affirmative defenses in response.  In addition, CCRM and Dr. Schoolcraft assert assigned counterclaims against American Economy for equitable subrogation, unjust enrichment, and contribution.  Goff and Taylor likewise deny that American Economy is entitled to declaratory relief, and seek damages on assigned counterclaims for breach of contract, bad faith breach of insurance contract, and violations of the Colorado Consumer Protection Act, § 6-1-101, *et. seq.*, as well as an added claim for exemplary/punitive damages pursuant to Colo. Rev. Stat.§ 13-21-102(1.5)(a).   Subject matter jurisdiction for this case is based on diversity of citizenship under 28 U.S.C. § 1332, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

## II. UNDISPUTED FACTS

In January of 2001, Goff and Taylor sought reproductive assistance and counseling from CCRM and Dr. Schoolcraft regarding their attempts to conceive a child. After determining that Ms. Taylor's eggs were apparently not viable, CCRM and Dr. Schoolcraft suggested that Goff

and Taylor use donor eggs in order to conceive.  In March 2002, Ms. Taylor was implanted with embryos from donor eggs that had been fertilized with Mr. Goff's sperm.  After implantation, Goff and Taylor were informed that the egg donor carried the cystic fibrosis gene.  Mr. Goff subsequently tested positive for the cystic fibrosis gene as well.   Ms. Taylor ultimately gave birth to fraternal twins, a girl and a boy, on November 5, 2002.  After birth, the female twin, M.G., was diagnosed with cystic fibrosis.

As a result, Goff and Taylor, individually and on behalf of M.G., filed a lawsuit in state court against CCRM and Dr. Schoolcraft, as well as other doctors affiliated with CCRM, on September 15, 2004 (the "underlying lawsuit").  In that lawsuit, Goff and Taylor asserted the following eleven claims for relief:  1) Professional Negligence; 2) Negligent Misrepresentation; 3) Violation of the Consumer Protection Act; 4) Uninformed Consent; 5) Products Liability; 6) Breach of Implied Warranties;  7) Products Liability for Negligence/Duty to Warn; 8) Strict Products Liability for Misrepresentation; 9) Nondisclosure; 10) Respondeat Superior; and 11) Joint Liability.

During the relevant time period, CCRM and Dr. Schoolcraft were insured under a professional liability policy issued by COPIC Insurance Company.  In October of 2004, COPIC acknowledged potential coverage under its policy on the claims it deemed "sounded in professional misconduct" and further agreed to provided a defense on the remaining claims under a reservation of rights.

Also during this time, CCRM and Dr. Schoolcraft were insured under a commercial general liability policy (the "CGL" policy) issued by American Economy (as an affiliate of Safeco Corporation).  On December 20, 2004, American Economy advised CCRM's and Dr.

Schoolcraft's counsel that their commercial general liability policy did not provide coverage or a defense for the claims asserted in the underlying lawsuit.   Counsel sought reconsideration of the denial in a letter dated January 4, 2005.   On April 13, 2005, an American Economy adjuster, Michael Kreutzer, telephoned counsel and advised that American Economy would, in fact, provide CCRM and Dr. Schoolcraft with a defense subject to a reservations of rights.

The matter was subsequently re-assigned to a new claims adjuster at American Economy, Lola Shoemake.  On May 23, 2005, Ms. Shoemake informed CCRM and Dr. Schoolcraft that American Economy "does not presently believe that it has a duty to provide a defense to [CCRM and Dr. Schoolcraft] in connection with the claims contained in the [underlying] complaint."

Thereafter, CCRM and Dr. Schoolcraft entered into an agreement with Goff and Taylor settling the claims in the underlying lawsuit.  In exchange for the dismissal of the claims against the named doctors, CCRM agreed to arbitrate the issue of damages only.  CCRM also agreed to an unconditional payment under the COPIC professional liability policy of its limits.

As part of the settlement agreement, CCRM and Dr. Schoolcraft assigned to Goff and Taylor  "all of their rights, title, and interest in their claims against [American Economy] for collection of the amount of the unsatisfied portion of the judgment . . . if any" as set by the arbitration award.  The settlement agreement specifies that Goff and Taylor "intend to initiate proceedings against [American Economy] to recover the full amount of the judgment against [CCRM] obtained following arbitration.  The claims in these proceedings will includes, among others, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Colorado Consumer Protection Act."  The settlement agreement further specified that COPIC retained the "right to prosecute any claims that it has against [American Economy]

4

for reimbursement of payments it has made on behalf or its insureds," CCRM and Dr. Schoolcraft.

COPIC subsequently assigned to CCRM and Dr. Schoolcraft its "claims for equitable

subrogation, contribution and unjust enrichment against" American Economy.

American Economy was informed of the settlement eight days prior to the arbitration

proceedings on damages, which took place on September 28, 2005.  After a hearing, the

Arbitrator assessed economic and non-economic damages in Goff's and Taylor's favor in an

amount that significantly exceeded the payment under the COPIC policy.  The arbitration award

was later confirmed in a judgment against CCRM.  The day before the arbitration, American

Economy filed this lawsuit seeking a declaration that it had no duty to provide a defense or

indemnification to CCRM and Dr. Schoolcraft in the underlying litigation  pursuant to the CGL

policy.

### III. APPLICABLE LAW

Subject matter jurisdiction of this case is based on diversity of citizenship pursuant to 28

U.S.C. § 1332, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Generally, a

federal trial court sitting in diversity applies the forum state's choice of law.  *See Klaxon Co. v.*

*Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *TPLC, Inc. v.*

*United Nat'l Ins. Co.*, 44 F.3d 1484, 1490 (10th Cir. 1995).  The parties agree that Colorado

substantive law applies here.

I am to apply the most recent statement of Colorado law by the Colorado Supreme Court.

*Blackhawk-Central City Sanitation Dist. v. American Guarantee and Liability Ins. Co.,* 214 F.3d

1183, 1188 (10th Cir. 2000)(*citing Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir. 1994)).

If the Colorado Supreme Court has not yet addressed an issue, I am to predict how that court

would decide the question.  *Blackhawk-Central City Sanitation v. American Guarantee and Liability Ins., supra*, 214 F.3d at 1183.

## IV. AMERICAN ECONOMY'S CLAIMS

In its motion for summary judgment, American Economy seeks judgment in its favor on its claim that it is entitled to a declaration that it did not have a duty to either defend or indemnify its insureds, CCRM and Dr. Schoolcraft, related to the underlying litigation.  In their motion seeking partial summary judgment, Goff and Taylor maintain that judgment should enter in their favor on American Economy's claim that it did not have a duty to defend CCRM and Dr. Schoolcraft in the underlying lawsuit.

## A.  Duty To Defend:

The duty to defend concerns an insurance company's duty to affirmatively defend its insured against pending claims.  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003)(*quoting Constitution Assocs. v. N.H. Ins. Co.,* 930 P.2d 556, 563 (Colo. 1996)).  When an insurer refuses to provide a defense to its insured, Colorado law requires the application of "traditional duty to defend analysis to the underlying complaint to determine the insurer's duty to defend."  *Cotter Corp. v. American Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 829 (Colo. 2004)(*citing Thompson v. Md. Cas. Co.,* 84 P.3d 496, 502 (Colo. 2004)).

A duty to defend arises "from allegations in the complaint, which if sustained, would impose a liability covered by the policy."  *Hecla Mining Co. v. N.H. Ins. Co.,* 811 P.2d 1083, 1089 (Colo. 1991).  To defeat a duty to defend, an insurer must establish that "there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured."  *Id.* at

6

1090. "Thus, the insurer bears the burden of establishing that 'the allegations in the complaint are solely and entirely within the exclusions in the insurance policy'. . . .". *Cotter Corp. v. American Empire Surplus Lines Ins., supra,* 90 P.3d at 829 (*quoting Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 618 (Colo. 1999)). "[A]n insurer has no duty to defend if the claims asserted in the complaint are clearly excluded from coverage." *Lopez ex rel. Lopez v. American Family Mut. Ins. Co.,* 148 P.3d 438, 439 (Colo. App. 2006)(*citing Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 85 (Colo. App. 1997)).

"The determination of the insurer's duty to defend is separate from the determination of the duty to indemnify, and is based solely on factual allegations contained in the underlying complaint." *Cotter Corp. v. American Empire Surplus Lines Ins., supra*, 90 P.3d at 827. Whether an insurer has a duty to defend is a question of law. *Blackhawk-Central City Sanitation v. American Guarantee and Liability Ins., supra*, 214 F.3d at 1188; *Flannery v. Allstate Ins. Co.*, 49 F.Supp.2d 1223, 1227 (D. Colo. 1999).

American Economy asserts that it is entitled to summary judgment and declaratory relief on its claim that it did not have a duty to defend its insured, CCRM and Dr. Schoolcraft, under the CGL policy because the factual allegations in the underlying complaint clearly fall within the professional services exclusion of the CGL policy. Conversely, in their motion for partial summary judgment Goff and Taylor assert that factual allegations made in the underlying lawsuit created at least a possibility of coverage under the CGL policy, triggering a duty to defend. Because American Economy has established that the allegations in the underlying lawsuit fall within the CGL exclusion for professional services, as a matter of law, I conclude that American Economy did not have a duty to defend its insured.

7

Generally, a CGL policy "protects businesses from third party claims for personal injury or property damage resulting from accidents . . . [and a] typical CGL policy broadly defines the damages to which it applies and then specifically lists exclusions to the broad grant of coverage." *Hoang v. Assurance Co. of America*, 149 P.3d 798, 802 (Colo. 2007)(*citing* 8 John W. Grund & J. Kent Miller, Colorado Personal Injury Practice-Torts and Insurance, § 52.2 & § 46.15 (2000)).

The CGL policy at issue provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury'".  American Economy does not contest, for the purposes of assessing its duty to defend, that the claims in the underlying complaint fall within this broad grant of coverage. However, such coverage is limited by the following exclusion:

**B. EXCLUSIONS**

     **1. Applicable to Business Liability Coverage**. This insurance does not apply to:
* * *

        **j. Professional services**.

        'Bodily injury', 'property damage', 'personal injury' or 'advertising injury' due to rendering or failure to render any professional service.  This includes but is not limited to:
* * *

        (4)  Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

        (5)  Any heath or therapeutic services treatment, advice or instruction;

American Economy argues that all of the factual allegations in the underlying complaint relate to the provision of medical services – specifically the *in-vitro* fertilization services provided to Goff and Taylor – and thus fall "solely and entirely" within this professional services exclusion.

8

As such, American Economy contends that it has met its burden to avoid providing its insured,

CCRM and Dr. Schoolcraft, with a defense because the factual allegations, even if sustained,

provide no basis from which is could be held liable for indemnifying its insured.  I agree.

As an initial matter, I reject Goff's and Taylor's argument that the definition of

"professional services" in the exclusion is ambiguous and, as such, should be construed against

American Economy as the drafter.  I disagree that the term as used in the exclusion is susceptible

to more than one reasonable interpretation.  *See Hecla Mining v. N.H. Ins., supra*, 811 P.2d at

1091; *American Economy Ins. Co. v. Jackson*, 476 F.3d 620, 624 (8th Cir. 2007)(ruling that the

terms "professional services" in this exclusion "have plain meaning, and [thus] judicial

construction is unnecessary").

I also note that Goff and Taylor argue that I should take into account American

Economy's reconsideration of its decision to provide a defense to its insureds as an indication that

American Economy believed at one time that it should provide a defense because there was a

potential basis for coverage.  In support of this argument, Goff and Taylor maintain that while

evidence extrinsic to a complaint may not be relied upon by an insurer to refuse a defense, such

evidence should be considered when the facts support the possibility of coverage.  *See generally*

Jerry, Robert H., II, Understanding Insurance Law, at pp. 734-35 (2nd Ed. 1998).  Goff and

Taylor have not provided me with any Colorado authority in support of their position.

Nonetheless, I conclude that the fact that American Economy at some point made the strategic

decision to offer a defense under a reservation of rights, and then reconsidered, does not create a

legal duty to defend where there is none under the facts alleged in the complaint under the law.

9

The underlying lawsuit generally alleged that CCRM and Dr. Schoolcraft – despite being "self-professed world leaders in assisted reproductive technology" – failed to inform Goff and Taylor of the simple and inexpensive test for cystic fibrosis and failed to screen the egg donor they selected for Goff and Taylor for the cystic fibrosis genetic mutation.  As a consequence, M.G. was born with cystic fibrosis "a deadly and painful disease which will require a lifetime of treatment."  Goff and Taylor asserted various claims for relief in the underlying lawsuit, which fell within two general legal theories for recovery – negligence-based theory and products-liability theory.

First, Goff and Taylor sought damages for CCRM's and Dr. Schoolcraft's professional negligence (first claim for relief), uniformed consent (fourth claim for relief) and non-disclosure (ninth claim for relief).   In these claims, Goff and Taylor asserted that CCRM was negligent in that it failed to perform genetic counseling and screening, failed to obtain Goff's and Taylor's informed consent about the risks of cystic fibrosis prior to implantation, and failed to disclose material facts concerning the screening of egg donors, prospective parents and embryos for the cystic fibrosis gene.  I agree with American Economy that such factual allegations are clearly related to injury "due to rendering or failure to render any professional service" as "[m]edical . . . services treatment, advice or instruction," *see generally, Gorab v. Zook*, 943 P.2d 423, 427 (Colo. 1997) and, thus, constitute allegations supporting their claims excluded by the professional services exclusion.

Goff's and Taylor's claim for negligent misrepresentation (second claim for relief) likewise constitutes an injury due to the rendering of a medical service.  The underlying complaint alleged that CCRM and Dr. Schoolcraft falsely told Goff and Taylor that they would provide "state-of-

10

the-art" *in-vitro* fertilization services, and perform appropriate genetic screening, which they

subsequently did not do.  However, in Colo. Rev. Stat. § 13-64-502(1), the Colorado legislature

has mandated that a claimant may not recover for injury:

> arising from genetic counseling and screening . . . where such damage or injury
> was the result of genetic disease or disorder or other natural causes, unless the
> claimant can establish by a preponderance of the evidence that the damage or
> injury could have been prevented or avoided by ordinary standard of care of the
> physician or other health care professional or health care institution.

Although it appears that no Colorado court has cited or reviewed this statute, I believe that the

Colorado Supreme Court would apply it to Goff's and Taylor's claim for negligent

misrepresentation as it relates to genetic counseling and screening in this case.  As set forth in the

underlying complaint, CCRM's and Dr. Schoolcraft's alleged failure to perform genetic screening

as part of their fertility services to Goff and Taylor, resulting in the birth of a baby with a genetic

disease, constitutes a claim requiring the application of a professional standard of health care

under § 13-64-502(1).  Accordingly, such misrepresentation as alleged here, is "due to rendering

or failure to render any professional service" which, in turn, constitutes a claim excluded by the

professional services exclusion.

Goff and Taylor also asserted that CCRM and Dr. Schoolcraft violated the Colorado

Consumer Protection Act, Colo Rev. Stat. §§ 6-1-101, *et seq.*, ("CPA") (third claim for relief) by

alleging that they engaged in deceptive trade practices when knowingly making false

representations about the quality and standards of CCRM's egg donor program and related

genetic testing.   Like the negligent misrepresentation claim, the complaint alleged that CCRM

and Dr. Schoolcraft made false statements about the quality of the program that they knew or

should have known was of a lesser quality.  I agree that such claims also arise from genetic

counseling, as defined in § 13-64-502(1), and would require proof that the related injury could

have been prevented by a standard of care for a physician.  *See generally* § 12-36-106(1)(b)

(defining acts which constitute the practice of medicine to include suggesting, recommending, or

administering any form of treatment, operation or healing).  Because Goff and Taylor would have

to prove a violation of the ordinary standard of care of a physician, I again conclude that their

CPA false representation claim is "due to rendering or failure to render any professional service"

excluded by the professional services exclusion in the CGL policy.

Goff and Taylor also alleged, in their third claim for relief, that non-professional CCRM

employees made inaccurate representations to them concerning the quality or standards of

CCRM's and Dr. Schoolcraft's services.  They further alleged -- under a theory of *respondeat*

*superior* as set forth in the tenth clam for relief -- that CCRM was responsible for the "negligence

and misrepresentations" of such unnamed employees.  As such, Goff and Taylor now assert that

"[t]he possibility clearly existed that false information, false representations, or negligence

regarding record keeping screening protocols, or other matters referenced in the complaint" were

provided by non-professional CCRM employees under the facts as alleged.  However, when

assessing whether the professional services exclusion applies to actions of a non-professional, it is

the nature of the act and not the character or title of the actor that is critical to a determination of

whether the factual allegations fall within the professional services exclusion.  *See American*

*Economy Ins. v. Jackson, supra,* 476 F.3d at 625 (*citing Shelter Ins. Cos. v. Hildreth*, 255 F.3d

921, 925 (8th Cir. 2001))(it is "the act or omission itself, and not the title or character of the party

who performs or fails to perform the act, to determine whether a particular service or treatment is

professional in nature"). Here, the actions and omissions alleged in the underlying lawsuit are all

related to the provision of medical services in the form of *in-vitro* fertilization procedure, and

genetic screening and counseling.

Goff and Taylor also alleged facts in the underlying complaint supporting claims for relief

based on a products-liability theory. The complaint asserted that CCRM and Dr. Schoolcraft

manufactured and sold to Goff and Taylor embryos assembled and obtained in the *in-vitro*

fertilization process, and that: the embryos were defective and unreasonably dangerous (fifth

claim for relief: products liability); they were not of merchantable quality or suitable for

implantation (sixth claim for relief: breach of implied warranties); CCRM and Schoolcraft acted

negligently when they failed to warn Goff and Taylor that the embryos carried the cystic fibrosis

mutation (seventh claim for relief: product liability for negligence); and that CCRM and Dr.

Schoolcraft misrepresented material facts concerning the character or quality of the embryos

(eight claim for relief: strict products liability for misrepresentation). Goff and Taylor argue that

these factual allegations could potentially trigger coverage under the CGL policy that, in turn,

implicates American Economy's duty to defend. All these claims are based on the underlying

assertion that CCRM and Dr. Schoolcraft manufactured and sold to Goff and Taylor embryos

assembled and obtained in the *in-vitro* fertilization process.

Colo. Rev. Stat. § 13-22-104 provides, in pertinent part, that:

> The donation, whether for or without valuable consideration, the acquisition,
> preparation, transplantation, injection, or transfusion of any human tissue, organ,
> blood, or component thereof *for or to* a human being *is the performance of a*
> *medical service* and does not, in any way, constitute a sale.

(emphasis added); *see also* Colo. Rev. Stat. § 4-2-102(1)(b)(the Colorado Uniform Commercial

Code does not apply to the "acquisition, preparation, transplantation, injection, or transfusion of any human tissue, organ, or blood or component thereof for or to a human being"). Although this statute has not been applied to the circumstance presented here, I conclude that the Colorado Supreme Court, if faced with the question, would find that it is applicable to an embryo. *See generally United Blood Services, a Div. of Blood Systems, Inc. v. Quintana,* 827 P.2d 509, 519 (Colo. 1992)(applying the statute to assess a "blood bank's responsibility for the acquisition, preparation, and transfer of human blood or its components for medical transfusion into a human being"). Embryos clearly constitute "human tissue," or components thereof, that in the context of *in-vitro* fertilization, as here, have been "acquired, transplanted, and injected" in accordance with § 13-22-104(2). As a result, because the implantation of an embryo is deemed the performance of a medical service under Colorado law, I conclude that the products liability claims in the underlying complaint are likewise "due to rendering or failure to render any professional service" and, thus, excluded by the professional services exclusion in the CGL policy.

I reject Goff's and Taylor's argument that because CCRM and Dr. Schoolcraft paid a separate premium in order to obtain products-completed operations coverage under the CGL policy here, the professional services exclusion cannot preclude coverage for the underlying product liability claims – such as breach of warranty and misrepresentation – related to the embryos sold or supplied by CCRM. *See e.g. S.T. Hudson Engineers, Inc. v. Pennsylvania Nat. Mut. Cas. Co.*, 909 A.2d 1156, 1164 (N. J .Super. A.D. 2006). As I have determined, Colorado law specifically mandates that the implantation of an embryo is not a sale of a good or product; rather is constitutes the provision of a medical service pursuant to § 13-22-104. While the specific allegations here do not implicate the products-completed operations coverage in the CGL

policy – which covers "[a]ny good or product … manufactured, sold, handled, distributed, or disposed of" by CCRM and Dr. Schoolcraft – it likewise does not render the coverage "illusory." *See generally State Farm Mut. Auto. Ins. Co. v. Nissen,* 851 P.2d 165, 168 (Colo. 1993); *Church Mut. Ins. Co. v. Klein,* 940 P.2d 1001, 1003 (Colo. App. 1996)(finding that although an exclusion was applicable to deny coverage in that case, it was not illusory).

I am cognizant that Colorado does not want "to create an incentive for insurers to refuse to defend in the hope that litigation will reveal that no duty to defend exists." *Cotter Corp. v. American Empire Surplus Lines Ins., supra*, 90 P.3d at 828 (citations omitted). However, under the alleged facts in the underlying complaint at issue here, I conclude that American Economy has met its heavy burden to prove that the factual allegations in the complaint fall solely and entirely within the professional services exclusion. *See e.g. Lopez ex rel. Lopez v. American Family Mut. Ins., supra,* 148 P.3d at 439 (applying case law to determine that the insurer met its burden to refuse a defense under the policy's intentional acts exclusion when the factual allegations were that the son of the insured used a BB gun to shoot the plaintiff five times in the head); *Leprino v. Nationwide Property and Cas. Ins. Co.*, 89 P.3d 487, 490 (Colo. App. 2003), *cert. denied*, 89 P.3d 487 (2004)(ruling that alleged acts did not potentially trigger coverage, based on the lack of actual injury within policy period, and thus insurer was not obligated to provide a defense); *Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1302 (Colo. App. 1998) (because the underlying complaint only alleged facts of intentional conduct specifically excluded by the policy at issue, the "presence of a negligence claim" in the complaint did not invoke the insurance company's duty to defend).

American Economy has established, as a matter of law, that "there is no factual or legal

basis on which the insurer might eventually be held liable to indemnify the insured." *Hecla Mining v. N.H. Ins., supra,* 811 P.2d at 1090. As such, summary judgment is appropriate in favor of American Economy on its claim seeking declaratory relief that it had no duty to defend CCRM and Dr. Schoolcraft in the underlying lawsuit. And, as a result, I deny Goff's and Taylor's Motion for Partial Summary Judgment seeking judgment in their favor on the question of American Economy's duty to defend.

**B.  Duty to Indemnify:**

American Economy also seeks judgment in its favor on the issue of whether it is required to indemnify its insured, CCRM and Dr. Schoolcraft, on the basis that the CGL policy at issue does not provide coverage for the claims raised in the underlying lawsuit.

The duty to indemnify relates to a liability insurer's obligation  to satisfy a judgment entered against the insured. *Constitution Assocs. v. N.H. Ins., supra,* 930 P.2d at 563. Such a duty arises when "the policy *actually* covers the alleged harm." *Id.* (emphasis in original)*; see also Cotter Corp. v. American Empire Surplus Lines Ins., supra,* 90 P.3d at 830. Because the duty to defend is broader than the duty to indemnify, "where no duty to defend exists, it follows that there can be no duty to indemnify." *Cyprus Amax Minerals Co. v. Lexington Ins., supra*, 74 P.3d at 300 (*quoting Compass Ins. v. City of Littleton*, supra, 984 P.2d at 621). Because I have found that American Economy had no duty to defend its insureds, CCRM and Dr. Schoolcraft, American Economy is likewise entitled to a declaratory judgment that it has no duty to indemnify as the CGL policy at issue does not provide coverage for the claims raised in the underlying lawsuit.

16

## V.  GOFF'S AND TAYLOR'S COUNTERCLAIMS

American Economy also seeks summary judgment against Goff and Taylor on their assigned counterclaims for breach of contract, bad faith, and violations of the Colorado Consumer Protection Act.  Because I have found no duty to defend or indemnify in this case, I agree that American Economy cannot be found to have breached the CGL policy, acted in bad faith, or violated the Colorado Consumer Protection Act as a matter of law.  The pleadings reveal that Goff and Taylor's counterclaims are based on American Economy's actions when refusing to defend and/or indemnify.  Because Goff's and Taylor's counterclaims emanate from American Economy's alleged failure to provide coverage or a defense in the underlying litigation, summary judgment is proper on these counterclaims in favor of American Economy.  *See Leprino v. Nationwide Property and Cas. Ins., supra,* 89 P.3d at 492; *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 326 (Colo. App.1995).

## VI.  CCRM'S AND DR. SCHOOLCRAFT'S COUNTERCLAIMS

American Economy also seeks summary judgment against CCRM and Dr. Schoolcraft on their assigned counterclaims for equitable subrogation, unjust enrichment, and contribution, in which CCRM and Dr. Schoolcraft seek damages for the funds COPIC expended in the defense and settlement of the underlying lawsuit.   Again, because I have determined that American Economy did not have a duty to indemnify CCRM and Dr. Schoolcraft under the CGL policy related to the underlying litigation, summary judgment is proper on these claims in favor of American Economy.   As a result, I grant American Economy's Motion for Summary Judgment.

## VII.  AMERICAN ECONOMY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Finally, in its Motion for Partial Summary Judgment, American Economy maintains it does not have an indemnity obligation to CCRM and Dr. Schoolcraft, or their assigns, for the judgment entered in the underlying lawsuit, because such judgment is based on an unenforceable  settlement agreement pursuant to the requirements of *Northland Ins. Co. v. Bashor,* 177 Colo. 463, 494 P.2d 1292 (Colo. 1972).  I do not reach the merits of this alternative motion, however, as I have granted American Economy's motion for summary judgment and their request for declaratory relief on the indemnification question.   Therefore, American Economy's Motion for Partial Summary Judgment is denied as moot.

ACCORDINGLY, for the reasons stated above, it is therefore ORDERED as follows:

1) American Economy's Motion for Summary Judgment **[Doc # 158]** is GRANTED and, as a result, it is FURTHER ORDERED that:

> a) American Economy is entitled to summary judgment and declaratory relief that: American Economy has no duty to defend or indemnify its insureds, CCRM and Dr. Schoolcraft, under the CGL policy for any of the claims asserted in the underlying complaint; and

> b) Goff's and Taylor's assigned counterclaims for breach of contract, bad faith, and violations of the Colorado Consumer Protection Act are DISMISSED WITH PREJUDICE; and

> c) CCRM and Dr. Schoolcraft's assigned counterclaims for equitable subrogation, unjust enrichment and contribution are DISMISSED WITH PREJUDICE;

2) Goff's and Taylor's Motion for Partial Summary Judgment **[Doc # 126**] is DENIED; and

3) American Economy's Motion for Partial Summary Judgment **[Doc # 155]** is DENIED AS MOOT.

Dated: August 6, 2007,  in Denver, Colorado.

BY THE COURT:


s/Lewis T. Babcock
Lewis T. Babcock, Judge